# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**JERRY R. MARTINEZ,**

    **Plaintiff,**

vs.                                                                        **Civil No. 98-1376 JP/RLP**

**KENNETH S. APFEL,**
**Commissioner of Social Security,**

    **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.     Plaintiff, Jerry R. Martinez, (Plaintiff herein) filed an application for Supplemental Security Income Benefits (SSI) under title XVI of the Social Security Act on April 10, 1996, alleging that he had been disabled since May 31,1989. (Tr. 86, 91, 160). His application was denied at the first and second levels of administrative review (Tr. 63-67, 73, 143-149), and by an Administrative Law Judge (ALJ herein). (Tr. 12-23). The Appeals Council declined to review the ALJ's decision. (Tr. 3-4). His Complaint in this court contests the decision of the Commissioner of Social Security denying his claim. The matter is now before the court on Plaintiff's Motion to Reverse and Remand for rehearing.

**I.**     **Standard of review**

2.     Federal courts are authorized to review whether the Commissioner's decision is supported by substantial evidence and based on the correct legal standards. 42 U.S.C. §405(g). "Substantial

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

evidence" must be more than a "mere scintilla" of evidence but may be less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401, 92 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

3. Accordingly, this court shall examine the entire record, including whatever fairly detracts from the weight of the Commissioner's decision, in order to determine if the substantiality of the evidence test has been met and correct legal principles applied. **Casias v. Secretary of Health & Human Serv.**, 933 F.2d 799, 800-801 (10th Cir. 1991). However, this court will not reweigh the evidence or substitute its judgment for that of the Commissioner. **Id**. at 800.

## II. The five step disability evaluation

4. The Social Security Administration employs a five-step process in determining whether a claimant is disabled. 20 C.F.R. §416.920. The first step is to decide whether the claimant is currently engaged in "substantial gainful employment." **Id**. If so, the claim is denied without further evaluation.

5. The second step is to decide if the claimant's impairments are "severe." **Id**. If not, the claim is denied without further evaluation.

6. The third step is to decide whether medical findings about the claimant's impairments meet or equal the findings listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. If so, the claim is granted without further evaluation.

7. The fourth step is to decide whether the claimant's impairments prevent him from performing "past relevant work." 20 C.F.R. §416.920. If not, the claim is denied.

8. The last step is to decide whether the claimant could engage in other "substantial gainful activity," considering his age, education, and past work experience. **Id**. If not, the claim is granted.

**III.	The administrative decision**

9.	At the time of the administrative hearing, Plaintiff was 44 years old, had obtained a GED and had vocational training as an auto mechanic. (Tr. 32, 85, 95). He sustained a strain/sprain of his lumbar spine in May 1989. (Tr. 93, 194, 198-199, 188-189). In 1992 he injured a rib in a fall from his roof. (Tr. 91, 124). He alleges a date of onset of disability of May 31, 1989, as a result of severe back pain and numbness of his right leg. (Tr. 29, 34-35, 39-40, 86, 91).

10.	At the first step of the sequential evaluation, the Administrative Law Judge (ALJ) found that Plaintiff had not engaged in substantial gainful employment since filing his application for SSI benefits. (Tr.15). At the second step the ALJ agreed that Plaintiff had "severe impairments" consisting of chronic back pain, right leg numbness and residuals of an injured right rib. (Id.). At the third step, the ALJ decided the medical findings of Plaintiff's impairments did not meet or equal any listed impairment. (Id.). These findings have not been challenged. The ALJ then considered Plaintiff's testimony concerning the severity of his impairments, and found that his testimony was not fully credible, and did not establish symptoms or functional limitation that would preclude all work activity. (Tr. 16, 20). The ALJ found that while the evidence supported certain work related restrictions, it also demonstrated an ability to perform work at the sedentary exertional level. The ALJ determined at step four that Plaintiff could not return to past relevant work which was in the medium to heavy exertional range. (Tr. 21). At the fifth step, the ALJ applied the Medical and Vocational Guidelines (Grids) as a framework, determined that Plaintiff had the residual functional capacity for sedentary work, and was therefore not disabled. (Tr. 22)

**IV.	Issues on appeal**

11.	Plaintiff argues that:

A. Substantial evidence does not support the ALJ's finding that Plaintiff has the residual functional capacity for a full range of sedentary work;

B. The ALJ erred in concluding that Plaintiff's testimony was not credible; and

C. The ALJ erred in using the Grids as a framework for decision-making.

**V. Discussion**

   **A. Substantial evidence supports the ALJ's finding that Plaintiff has the residual functional capacity for a full range of sedentary work.**

12. Sedentary work involves lifting no more than ten pounds at a time, no more than two hours of walking and standing a day, and a total of six hours of sitting a day. Soc. Sec. Rul. 83-10; 20 C.F.R. § 416.967(a). If a claimant cannot sit for extended periods of time, then the range of sedentary jobs he or she can perform may be limited, especially in "[u]nskilled types of jobs[, which] are particularly structured so that a person cannot ordinarily sit or stand at will." Soc.Sec.Rul. 83-12. In such a case, a vocational expert should be consulted. Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) (citing Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991).

13. The ALJ considered the opinions of the Administration's program physicians, treating physicians (Drs. Swaijian, Diskant and McCutcheon) and the consulting/examining physician (Dr. Pacheco, recent radiological studies and Plaintiff's daily activities in assessing Plaintiff's residual functional capacity. (Tr. 16-18).

   a. The program physicians.[2]

---

[2] Social Security Ruling 96-6p states that findings regarding the nature and severity of an impairment made by state agency consultants and other program physicians and psychologists "must be treated as expert opinion evidence of nonexamining sources." Soc.Sec.Rul. 96-8p. An ALJ "may not ignore these opinions and must explain the weight given to these opinions in their decisions." **Id**.

4

14. The program physicians stated that Plaintiff had the capacity to perform work at the light exertional level.[3] (Tr. 65, 67, 73, 143-149). The ALJ agreed to the extent that Plaintiff had the capacity to perform work, but not at the light exertional level. (Tr. 16).

    b.    The treating physicians.[4]

15. Dr. Swaijian treated Plaintiff from June 2 to August 21, 1989. (Tr. 92). It was Dr. Swaijian's opinion that Plaintiff suffered a subacute strain/sprain of the lumbar and lumbo-sacral area, with no evidence of a bulging or herniated disc, lumbar radiculitis or radiculopathy. On August 21, 1989, he stated that plaintiff was capable of performing very light or sedentary work. (Tr. 194).

16. Dr. Diskant was Plaintiff's treating physician from November 7, 1989, to June 6, 1990. (Tr. 92). As of December 8, 1989, Dr. Diskant noted that Plaintiff had mild limitation of the lumbar spine, with no neurological deficits. (Tr. 189). An MRI study demonstrated mild disc degeneration with mild annular bulging at L4-5 and L5-SI, without thecal sac indentation or nerve root impingement. (Tr. 188). Dr. Diskant stated that there was no structural disease of Plaintiff's spine that would preclude return to prior work, provided Plaintiff undertake a work hardening program. On January 26, 1990, Dr. Diskant reevaluated Plaintiff. On physical examination, Plaintiff had good lumbar range of motion, no focal tenderness or muscle spasm, and a normal neurological examination. Dr. Diskant also reviewed a recently completed functional capacity evaluation. Dr. Diskant stated that Plaintiff

---

[3] The initial reviewing physician supported this opinion by citing to the findings on physical examination by the examining physician, Dr. Pacheco. (Tr. 144-145). Those findings are set out in ¶19, infra.

[4] In determining the question of substantiality of evidence, the reports of physicians "who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." **Sorenson v. Bowen,** 888 F.2d 706, 711 (10th Cir. 1989), citing **Broadbent v. Harris**, 698 F.2d 407, 412 (10th Cir. 1983), (quoting **Allen v. Califano**, 613 F.2s 139 (6th Cir. 1980)).

5

could return to work consistent with a functional capacities assessment indicating an ability to lift up to 20 pounds occasionally, 10 pounds frequently and to limit bending. (Tr. 186). Dr. Diskant saw Plaintiff again on March 9, 1990. (Tr. 185). At that time Plaintiff continued to have a normal motor and sensory exam, symmetrical reflexes, negative straight leg raising test and somewhat reduced lumbar range of motion. (Tr. 185).

17. Plaintiff was evaluated by Michael McCutcheon, M.D., on June 18, 1990. (Tr. 190-193). As of that date, Plaintiff was taking no medications. (Tr. 190). He complained of low back pain aggravated by coming to a standing position, bending, twisting and coughing, a sitting tolerance dependant on chair and support, and a standing tolerance limited to 15 minutes. (Tr. 190-191). On physical examination, Dr. McCutcheon noted that Plaintiff had slight restriction of lumbar range of motion, minimal tenderness over this lumbar spine, a normal neurological and sensory exam, negative straight leg raising test, 1+ paravertebral muscle spasm, equal leg length and circumference, that he could walk on his heels and toes normally. (Id.). Dr. McCutcheon diagnosed degenerative disc disease at L4-5 and L5-S1. (Tr. 192). He stated that surgery and additional diagnostic work up was not indicated and that Plaintiff had an excellent prognosis for continued spontaneous recovery. (Id.) After review of the functional capacities evaluation, Dr. McCutcheon stated that Plaintiff was capable of again becoming a productive individual. (Id.).

18. Plaintiff sought no treatment for his back following this evaluation by Dr. McCutcheon. (Tr. 92-93).

    c. The examining physician

19. Plaintiff was evaluated by Eva Pacheco, M.D., at the request of the Administration on May 15, 1996. (Tr. 122-130). He complained of worsening back pain, right leg pain and numbness, for

which he took over the counter pain medication. On physical examination he had no abnormalities of his neck, arms or upper back, and full active range of motion of his lower extremities except for right knee extension, which was limited due to low back pain. He was able to forward flex, but could not reach the floor with his knees extended and arms outstretched. Back extension and lateral tilt were within normal limits. Full body rotation produced pain. His lower extremity strength was normal except for muscle weakness attributable to the L4-5 area. He had a positive straight leg raising test on the right, both sitting and supine. His patellar reflex on the right was reduced. No muscles spasm, obvious deformity, effusion tremor or spasticity were noted. He was able to walk without difficulty, to sit through a forty minute examination with few body changes, and to move his lower extremities without exhibiting pain. Dr. Pacheco diagnosed lumbo-sacral strain with radicular like complaints into the right lower extremity. She recommended a repeat MRI study of the spine, nerve conduction study to evaluate complaints of numbness and tingling of the right leg and treatment with epidural blocks if these tests were positive. Dr. Pacheco indicated that Plaintiff's low back pain limited his ability to lift and carry to 20 lbs. occasionally and 10 lbs. frequently; to stand and walk to 2 hours in an 8 hour day, for a maximum of 15 minutes without interruption; and to sit to 2 hours in an 8 hour day, for a maximum of 15-30 minutes without interruption. (Tr. 130-131).

       d.      Recent radiological testing

20.     A CT scan of Plaintiff's spine on May 28, 1997, showed prominent broad based disc bulges at L3-4 and L4-5 resulting in bilateral canal stenosis and neural foramina encroachment, and a focal central bulge at L5-S1 which encroached on the neural foramina. (Tr. 119, 201). The ALJ noted that no interpretation of this report was contained in the medical file. He indicated, however, that the CT scan findings did not appear significantly different from earlier studies, and did not contribute any

7

substantial new information about Plaintiff's back condition. (Tr. 19).

  e.  Daily activities

21. Plaintiff stated in written materials that he shops for clothes and groceries, pays bills, does some house cleaning, helps his children with their homework, drives when needed, takes care of his wife, reads at one hour intervals each day, watches television for 3-4 hours a day, listens to music daily and practices his guitar 1-2 hours each day if possible. (Tr. 94, 99, 101-102). He told the examining physician that he lifted 10-15 pound arm weights. (Tr. 123). He testified that he takes only over the counter medication and uses a TENS unit when he feels a back spasm coming on. (Tr. 51).

22. The ALJ considered all the evidence of record in assessing Plaintiff's residual functional capacity. The treating physicians, whose opinions are to be given the greatest weight, stated that Plaintiff could return to "very light or sedentary work" (Tr. 194) or work that involved frequent lifting of 20 lbs., constant lifting of 10 lbs. and limited bending. (Tr. 186). The consulting physician disagreed, indicating limitations that would preclude Plaintiff from performing sedentary or light work. The ALJ stated valid reasons for discounting the conclusions of the examining physician with regard to Plaintiff's functional limitations.[5] The non-examining agency physicians, reviewing and relying upon the objective findings of the consulting physician's examination, stated that Plaintiff could perform light work. (Tr. 65, 67, 73, 143-149). The ALJ stated that Plaintiff's daily activities were consistent with an ability to engage in sedentary work. (Tr. 20-21). Although there is room for

---

[5]The ALJ stated that Dr. Pacheco's conclusion that Plaintiff could sit no more than 2 hours in an 8 hour day was inconsistent with her observation that Plaintiff was able to sit for 40 minutes during examination, with only a few position changes, was able to move his upper and lower extremities without exhibiting pain, and had no evidence of muscle spasm, tremor or spasticity. (Tr. 21)

disagreement, under the standard this court must apply, I am compelled to find that substantial evidence supports the ALJ's conclusion that Plaintiff had the residual functional capacity for sedentary work.

      **B.**      **The ALJ did not err in discounting the credibility of Plaintiff's testimony.**

23.      The ALJ discounted the Plaintiff's credibility for several reasons:

- Clinical findings regarding his back have been relatively moderate in nature;
- At Dr. Pacheco's examination, Plaintiff had no muscle spasm, tremor or spasticity, could walk normally, and could sit for a relatively long period of time without much difficulty. (Tr. 126).
- Plaintiff's treating physicians felt he could perform some kind of light work activity. (Tr. 194, 186, 192).
- Plaintiff had had conservative, almost non-existent treatment regimen, with no care for his back since 1990. (Tr.190, 184-188, 190-193, 92-93, 113).
- In February 1997, Plaintiff was taking no pain medication (Tr. 118). At the time of the administrative hearing, he was taking only over-the-counter pain medication. (Tr.51).
- Plaintiff engages in numerous daily activities. (See ¶21, supra)

24.      The determination of a claimant's credibility is the provence of the ALJ. **Musgrave v. Sullivan**, 966 F.2d 1371, 1376 (10th Cir. 1992). If a claimant's testimony regarding disabling pain or functional limitation is rejected by the ALJ, he must articulate specific reasons for questioning that testimony. **See Kepler v. Chater**, 68 F.3d 387, 391 (10th Cir. 1995). I find that the ALJ articulated adequate, specific reasons for questioning Plaintiff's credibility.

9

### C. The ALJ did not err in using the Grids as a framework for decision-making.

25. The ALJ found Plaintiff's testimony regarding his pain and functional limitations not fully credible. Even though the ALJ found that Plaintiff did have symptom producing medical problems (Tr. 16), the impairment stemming from his medical condition does not preclude use of the grids if his nonexertional impairments (e.g., pain) do not further limit his ability to perform work. **Castellano v. Secretary of Health & Human Serv.,** 26 F.3d 1027, 1030 (10th Cir. 1994). I find that the ALJ's determination that Plaintiff's residual functional capacity for sedentary work was not further limited by his nonexertional impairments is supported by substantial evidence in the record. Accordingly, the ALJ did not err in using the Grids as a framework concluding that Plaintiff was not disabled.

### VI. Recommendation

26. For these reasons, I recommend that Plaintiff's Motion to Reverse or Remand be denied and that the decision of the Commissioner, denying Plaintiff's Application for Supplemental Security Income benefits be affirmed.

<br>

_____
RICHARD L. PUGLISI
UNITED STATES MAGISTRATE JUDGE